# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SUSAN R. CLOSSON, *et al.*,

    Plaintiffs,

v.

RECONTRUST COMPANY, *et al.*,

    Defendants.

Case No. 2:11-CV-00146-KJD-RJJ

**ORDER**

    Presently before the Court is Defendants' Motion to Dismiss (#12). Plaintiffs filed a response in opposition (#23) to which Defendants replied (#24). Plaintiffs then filed a Sur-reply (#25) without leave of the Court. Defendants replied (#29) to the sur-reply. Plaintiffs then filed a second Sur-reply (#31).

I.  Background

    In August 2003, Plaintiffs refinanced property that they had purchased at 5450 Manteca Circle, Las Vegas, NV 89118 ("the Property"). In order to complete the transaction, Plaintiffs obtained a $404,000.00 loan from Countrywide Home Loans, Inc. which they secured with a Deed of Trust in favor of Countrywide. That Deed of Trust designated Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and nominee of the lender. The Deed of Trust also named CTC Real Estate Services, Inc. as Trustee. The Deed of Trust allowed the Lender to

foreclose if Plaintiffs failed to make payments under the Note, and granted broad powers to MERS to act on the Lender's behalf, including the power to foreclose, or take any action required of Lender, its successors or assignees.

Plaintiffs defaulted on their obligations in December 2008. Defendant Reconstrust, as agent for beneficiary, initiated foreclosure proceedings by recording a Notice of Default and Election to Sell on April 23, 2009. On April 24, 2009, MERS substituted Recontrust as the trustee under the Foreclosing Deed of Trust. Plaintiffs did not cure their default, and Notice of Trustee's Sale was recorded on July 28, 2009, noticing a sale date of August 14, 2009. However, the sale was postponed and noticed four additional times through April 11, 2011.

On January 27, 2011, Plaintiffs filed the present complaint alleging claims against Defendants for violations of the Real Estate Settlement Practices Act ("RESPA"), fraud, breach of contract, fraudulent foreclosure, quiet title, and violations of the Fair Debt Collection Practices Act ("FDCPA"). Defendants have now moved to dismiss all of Plaintiffs' claims.

II.  Standard for a Motion to Dismiss

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations

which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

III.  Analysis

    A. RESPA

Most of Plaintiffs' claims under RESPA are barred by either its one-year or three-year statute of limitations, 12 U.S.C. § 2614. Claims under both sections 2607 and 2608 must be brought within one-year of the alleged violation. Claims brought under section 2605 must be brought within three years of the alleged violations. Therefore, all claims that arose during the origination of the loan, its closing, and the alleged transfer of the loan servicing are barred by the three-year statute of limitations. The only claims alleged in the complaint that are not barred by the statute of limitations are Plaintiffs' allegations that Defendant BAC Home Loans Servicing LP failed to appropriately respond to their "Qualified Written Request" ("QWR").

While section 2605 does require a servicer to respond to written correspondence that includes enough information for the servicer to identify the name and account of the borrower, the request must include a statement of the reasons for the belief of the borrower that the account is in error. Here, the Court finds that Plaintiffs have not stated a claim for relief, because Plaintiffs' thirty-one (31) page request does not include a statement that puts the servicer on notice of what reasons the account might be in error.

Furthermore, even if the overbroad letter was sufficient, Plaintiff has not stated a claim for actual or statutory damages. In reply to the motion to dismiss, Plaintiffs assert that they have "suffered damages to their credit ratings; the title to their property has been clouded and is at risk of losing their home." However, this statement of damages is too speculative and tangential to the QWR to state a claim. Plaintiffs' credit rating and risk of loss of their home is directly related to their failure to make payments on the loan. Furthermore, allegations of risk to credit without

1  specifically cited pecuniary damage is too speculative to state a claim.  See Moon v. Countrywide
2  Home Loans, Inc., 2010 WL 522753, *5 (D. Nev. Feb 9, 2010); Katz v. Dime Sav. Bank, 992 F.
3  Supp. 250 (W.D. N.Y. 1997)(QWR claim requires allegations of actual denial of credit, actually
4  inability to sell or refinance home, not just what "might have" befallen mortgagor), compare In re
5  Payne, 386 B.R. 614 (Bkrptcy. D. Kan. 2008)(debtors entitled to $350.00 in out-of-pocket expense
6  for failed refinance where servicer's failure to respond to QWR was cause of failed refinance).
7  Finally, Plaintiffs' allegation that BAC failed to respond to its sole QWR is insufficient to establish a
8  "pattern or practice" of RESPA violations supporting statutory damages.  See Morris v. Bank of
9  America, 2011 WL 250325, *5, n.9 (N.D. Cal. Jan. 26, 2011).  Accordingly, the Court dismiss
10 Plaintiffs' claims for violation of RESPA.
11         B.  Plaintiffs' Second, Third, Fourth, Fifth, and Sixth Causes of Action
12         Though Plaintiffs label these causes of action as fraud, breach of contract, wrongful
13 foreclosure, quiet title, and violations of the FDCPA, the substance of Plaintiffs' allegations is that
14 Plaintiffs' home is being wrongfully foreclosed on because the parties filing the statutorily required
15 notices do not have authority to do so and that MERS has neither the authority to transfer the
16 beneficial interest in the property nor the authority to act on behalf of the party that does have the
17 beneficial interest.  Plaintiffs allege that these actions are fraudulent, breach the contracts at issue in
18 this action and result in wrongful foreclosure requiring Plaintiffs to seek to quiet title.  However,
19 Plaintiffs' assertion that MERS did not have authority to act is incorrect.
20         Under Nevada law, the foreclosure process is commenced by the recording of a notice of
21 default by the beneficiary, successor in interest of the beneficiary, or trustee. N.R.S. § 107.080(2)(c).
22 After at least three months have elapsed, the trustee or other person authorized to make the sale
23 under the terms of the deed of trust shall give notice of sale in accordance with the posting
24 requirements for residential foreclosures. N.R.S. § 107.080(4). A foreclosure sale may be declared
25 void if the trustee or other person authorized to make the sale did not substantially comply with the
26 foreclosure statutes. N.R.S. § 107.080(5). Here, Plaintiffs allege that Recontrust was not authorized

to foreclose, i.e. record the Notice of Default, upon the Property because MERS was not authorized to transfer the beneficial interest in the mortgage loan. See Complaint, ¶¶ 90-95, 101-102, 111-27.

The Deed of Trust designates MERS as a "nominee for the Lender and Lender's successors and assigns." See Plaintiffs' Complaint (Doc. No. 1, Ex. 1, p. 18 of 135). Plaintiffs allege that MERS' authority as a "nominee" is limited to acting as a form of agent for the lender, which according to Plaintiffs, does not allow MERS to assign, transfer or otherwise convey any interest in the note or Deed of Trust to any other entity.

Black's Law Dictionary defines "nominee" as "[a] person designated to act in place of another, [usually] in a very limited way.'' Weingartner v. Chase Home Finance, LLC, 702 F.Supp.2d 1276, 1279 (D. Nev. 2010). In short, "a nominee is an agent with limited powers, akin to a special power of attorney." Id. This applies to cases such as the present one, where an entity is nominated on a deed of trust by the holder of a promissory note, with the limited role of administering the deed of trust on the holder's behalf. Id. This definition indicates that a "nominee is a kind of agent working to the benefit of another." Id. In the present case, "that other person is the holder of the promissory note or its assigns." Id. Therefore, based on this definition, MERS, in its capacity as nominee, has the right to substitute a new trustee on the Deed of Trust. See id. at 1280.

Plaintiffs correctly note that MERS is not a beneficiary to the Deed of Trust and further allege that MERS has no standing to convey or transfer assignments. Courts within this jurisdiction have addressed the conflation of the terms "nominee" and "beneficiary" in boilerplate provisions within deeds of trust such as the one at issue here. These courts have concluded that:

> Although MERS is not in fact the beneficiary, the attempt to name it as such…indicates an intent to give MERS the broadest possible agency on behalf of the owner of the beneficial interest in the underlying debt. Such agency would include the ability to sell the interest in the debt.

Villa v. Silver State Fin. Servs., 2011 WL 1979868, at *1 (D. Nev. 2011). Furthermore, the Deed of Trust explicitly states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary

5

> to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

See Defendants' Motion to Dismiss (Doc. No. 1, Ex. 1, p. 21 of 135). This language is "clear enough… to indicate that the parties intended MERS would be able to transfer the beneficial interest in the underlying debt directly." Villa, 2011 WL 1979868, at *1 (D. Nev. 2011). Furthermore, "it is even more clear that MERS may directly transfer the interest in the deed of trust itself...." Smith v. Community Lending, Inc., 2011 WL 1127046, at *2 (D. Nev. 2011). Accordingly, Plaintiffs have failed to allege any specific defect in the current foreclosure documents or proceedings prohibiting foreclosure under Nevada law.

Plaintiffs' allegation that foreclosure is improper because Defendants have failed to possess and produce the note to validate the powers vested under the Deed of Trust fails because "defendants do not need to produce the note to the property in order to proceed with a non judicial foreclosure." Clingman v. Somy, 2011 WL 383951, at *2 (D. Nev. Feb. 3, 2011). Case law within this district holds that N.R.S. § 107.080 "does not require a lender to produce the original note or prove its status as a real party in interest, [a] holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings." Kwok v. Recontrust Company, N.A., 2010 WL 4810704, at *4 (D. Nev. 2010); see also Ritter v. Countrywide Home Loans, Inc., 2010 WL 3829378, at *3 (D. Nev. 2010) ("[T]he court has consistently held that NRS § 107.080 does not require MERS or any other similar entity to show it is the real party in interest to pursue nonjudicial foreclosure actions.").

Plaintiffs' best remedy would have been to seek their right to mediation through Nevada Assembly Bill 149 which amends Chapter 107 by adding a requirement that if the grantor or person holding title of record notifies the trustee that it seeks mediation, the power of sale be stayed until completion of mediation. The mediation requires the beneficiary of the deed of trust or a

6

representative to appear at the mediation with the original or certified copy of the deed of trust, the mortgage note, and each assignment of the deed of trust or mortgage note.  The trustee, or person appearing on the trustee's behalf, must have authority to modify the terms of the loan.  See 2009 NV A.B. 149, Nevada Seventy-Fifth Regular Session.  The record is silent as to whether Plaintiffs requested their right to mediation.  If the opposing parties had failed to produce documentation substantiating their claim to authority to proceed with foreclosure or had otherwise failed to mediate in good faith, Plaintiffs could then have sought relief in state court.

In many instances, parties are barred from seeking relief in federal court where they have failed to exhaust all administrative or state law remedies.  Though this issue has not been decided in Nevada, there are powerful public policy reasons to require parties to undergo mediation before they file foreclosure related lawsuits.  Plaintiffs complain that Defendants acted without authority and the use of MERS deliberately masks the true party with a beneficial interest in the note and Deed of Trust.  However, the State of Nevada Legislature saw this problem and created the requirement that parties be given the option to attend a mandatory mediation at which a party with authority to modify the loan be present.

The Court concludes that Recontrust acted properly acting as agent for beneficiary and was properly substiuted by MERS as trustee, and therefore, the notice of default issued by Recontrust, and the notice of trustee's sale issued by Recontrust as substituted trustee, are valid under Nevada statutes. Plaintiffs have therefore failed to allege any cognizable defect.  See e.g. Berilo v. HSBC Mortg. Corp., USA, 2010 WL 2667218, at *4 (D. Nev. 2010) ("[N]othing prevents an authorized agent from recording a notice of default. Nor does Nevada law require a substitution of trustee be recorded prior to a notice of default.").  Thus, Plaintiffs' complaint for wrongful foreclosure fails to state a claim.[1]  First, the Deed of Trust expressly authorizes MERS to act as nominee for Lender, to

---

[1] Since the property has not yet been sold at auction, no actionable foreclosure has taken place.  A claim to set aside a foreclosure must be brought within ninety (90) to one hundred and twenty (120) days after the foreclosure sale depending on which part of Nevada statute a plaintiff alleges has been violated.

act as beneficiary and "to take any action required of Lender[.]"  The Deed of Trust at issue in this action is nearly identical to the one in Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1042 (9th Cir. 2011) which found that consumers were not misled about MERS' role in their home loans.

After examining each document the Court may take judicial notice of, the Court can find no deficiency in the assignments of the Deed of Trust, substitutions of Trustee, or notices required in Nevada statute.  Each party that acted was authorized to act as they did by the Deed of Trust, Note, and by state statute.  Furthermore, Plaintiffs' claims regarding securitization of the Note and the involvement of MERS have been foreclosed by Cervantes.  Id. at 1044.  The Court's review of the Deed of Trust and judicially noticed, recorded documents demonstrates no defect as alleged by Plaintiffs.

Next, Plaintiff's wrongful foreclosure claims fail, because Plaintiffs do not dispute that they are in default and cannot cure the default.  Nevada recognizes the tort claim of wrongful foreclosure where homeowners allege that a lender wrongfully exercised the power of sale and foreclosed upon their property when they were not in default on the mortgage loan. See Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983). However, Plaintiffs do not dispute their delinquency on the mortgage.  Therefore, the Court dismisses Plaintiffs' claims for wrongful foreclosure, breach of contract, fraud, and violations of the FDCPA.[2]

Plaintiffs' last claim, to quiet title, must also be dismissed.  In Nevada, a quiet title action may be brought "by any person against another who claims an…interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." N.R.S. § 40.010.  In a claim for quiet title "the burden of proof rests with the plaintiff to prove a good title in himself." Velazquez v. Mortgage Electronic Registration Systems, Inc., No. 2:11–CV–576, slip op., 2011 WL

---

[2]The Court notes that Plaintiffs have failed to respond to many of the arguments in Defendants' motion to dismiss.  Failure to file points and authorities in opposition to a motion to dismiss, constitutes consent to the Court granting the motion. See Local Rule 7-2(d).  Therefore, the Court dismisses any claims that Plaintiffs failed to address, such as the motion to dismiss the FDCPA claim.

1599595, at *2 (D. Nev. Apr. 27, 2011) (quoting Breliant v. Preferred Equities Corp., 918 P.2d 314, 318 (Nev.1996)).  Since no other party has asserted a competing claim to the title, the Court must dismiss the claim for quiet title.

     Finally, in Plaintiffs' belated sur-replies, they assert that their claim for fraud is based on defendants statement that the only way they could obtain a loan modification was to not make payments for ninety (90) days.  However, this allegation and claim is not made in the complaint. Furthermore, fraud has a higher pleading standard under Rule 9, which requires a party to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Pleading fraud with particularity requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).

     Since the Court has dismissed all claims, Plaintiffs will be granted leave to amend their complaint in accordance with this order.  However, Plaintiffs are warned that mere recitation of its previous claims will be insufficient.  Any claims alleged in an amended complaint must contain the specificity required by Rule 9 and must include the facts necessary to state a claim as identified by the Court. Plaintiffs' wrongful foreclosure claims are premature, because no foreclosure has taken place.  If Plaintiffs reallege claims that the Court has dismissed without facts that state a claim, the Court will sanction Plaintiffs.

IV.  Conclusion

     Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#12) is **GRANTED**;

////
////
////
////
////

1   IT IS FURTHER ORDERED that Plaintiffs file an **Amended Complaint** within fourteen
2 (14) days of the entry of this order, failure to do so will result in this action being dismissed with
3 prejudice.
4   DATED this 15th day of March 2012.

_____
Kent J. Dawson
United States District Judge